**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| STEPHANIE SOJKA, DANIEL HARTOWICZ, and KENYATTA GILLIAM, on behalf of themselves and all others similarly situated, and MARK SOJKA, <br><br> *Plaintiffs*, <br><br> *v.* <br><br> DIRECTBUY, INC., an Indiana corporation, and DOES 1-10, <br><br> *Defendants*. | Case No. 1:12-cv-09809 <br><br> ***Related to:*** <br><br> Case No. 1:13-cv-01710 <br> Case No. 1:13-cv-02786 <br><br> Honorable Gary Feinerman |

<u>**SECOND CONSOLIDATED CLASS ACTION COMPLAINT AND JURY DEMAND**</u>

Plaintiffs Stephanie Sojka, Daniel Hartowicz, and Kenyatta Gilliam bring this class action complaint, and Plaintiff Mark Sojka brings his individual complaint, against Defendant DirectBuy, Inc. ("DirectBuy"), to stop Defendant's practice of making unsolicited phone and text message calls to the telephones of consumers nationwide in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and to obtain redress for all persons injured by its conduct. Plaintiffs, for their Consolidated Class Action Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

**NATURE OF THE ACTION**

1.      Defendant DirectBuy is a membership-based wholesale retailer of household goods, with over 130 brick and mortar locations in the United States and Canada.

2.      In an effort to promote its membership programs and attract new customers, Defendant, through its own telemarketing efforts as well as through one or more business

partners, made thousands of unsolicited telephone and text message calls to consumers nationwide.

3.      Neither Plaintiffs, nor the other members of the proposed Classes, ever provided their telephone numbers to Defendant for any purpose, nor did they consent to have Defendant make telephone or text message calls to those numbers.

4.      By making the calls and text messages at issue in this Consolidated Complaint, Defendant caused Plaintiffs and the members of the Classes actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited and harassing telephone calls and text messages.

5.      Defendant repeatedly made (or directed to be made on its behalf) unsolicited telephone and text message calls to Plaintiffs' and the other putative members of the Classes' telephones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

6.      The TCPA was enacted to protect consumers from unsolicited phone calls exactly like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiffs filed the instant (and now related and consolidated) lawsuits and seek an injunction requiring Defendant to cease all unsolicited calling and text messaging activities, and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees (in the event of a class recovery).

**PARTIES**

7.      Plaintiffs Stephanie Sojka and Mark Sojka are natural persons and citizens of the State of Illinois. They reside in this District.

8.      Plaintiff Daniel Hartowicz is a natural person and citizen of the State of Illinois.

He resides in this District.

9.     Plaintiff Kenyatta Gilliam is a natural person and citizen of the State of California. He resides in the Southern District of California.

10.     Defendant DirectBuy, Inc. is a corporation organized and existing under the laws of the State of Indiana with its principal place of business located at 8450 Broadway, Merrillville, Indiana. DirectBuy does business throughout the United States, the State of Illinois and in this District. DirectBuy is registered as a corporation with the Illinois Secretary of State to do business within the State of Illinois. Its registered agent and office is Prentice Hall Corporation, 33 North LaSalle Street, Chicago, Illinois 60602.

## JURISDICTION AND VENUE

11.     This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., a federal statute. *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 751-53 (2012); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005). Subject matter jurisdiction over this action is further appropriate in this Court pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the putative Classes is a citizen of a state different than Defendants, (ii) the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) none of the exceptions under that subsection apply to this action.

12.     The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant transacts significant amounts of business within this District and a substantial portion of conduct and events giving rise to Plaintiffs' claims arose in this District.

13.     Personal jurisdiction over Defendant is proper in this District because (1) Plaintiffs Stephanie and Mark Sojka and Hartowicz received phone calls from or on behalf of

Defendant in this District; (2) Defendant through its employees maintains, has oversight of and has direct personal contact with several retail locations in Illinois, including DirectBuy of Northern Illinois, DirectBuy of Naperville, and DirectBuy of Tinley Park; (3) Defendant has been registered to do business with the Illinois Secretary of State since 1986 (File No. 54164211); (4) Defendant carries out "diversified national advertising programs" on a nationwide basis for the purpose of generating consumer leads to DirectBuy locations in the State of Illinois, including distributing advertising in this District; (5) Defendant has mailed promotional materials to consumers in Illinois; (6) Defendant operates a trucking and shipping facility through its subsidiary, UCC Distribution, Inc., in this District "near Chicago"; (7) Defendant derives revenue from transactions occurring in Illinois; (8) Defendant has, for several years, contracted with a business residing in this District, Havas Worldwide Chicago (f/k/a RSCG/Chicago), to create and distribute its national advertising campaigns; (9) Defendant employs Illinois residents; (10) has entered into franchise agreements with Illinois corporations; (11) is paid royalties by its Illinois franchisees; (12) reserves the right to and/or exercises control over its Illinois franchisees with respect to marketing, advertising and promotional materials and activities; and (13) the terms of its Illinois franchise agreements prohibits DirectBuy from litigating any causes of action arising out of those agreements outside of the State of Illinois— except for arbitral proceedings.

## COMMON FACTUAL ALLEGATIONS

14.     Defendant DirectBuy is a membership-based wholesale retailer specializing in home furnishings and other home goods.

15.     As a necessary component of Defendant's business model, it must regularly recruit new members to join its programs and pay the associated monthly fees. As Defendant's

memberships are significantly more expensive than many similar membership-based programs, Defendant utilizes incentives to entice potential members into its showrooms.

16.     The incentives offered by Defendant can include gift cards, sweepstakes, other gift items, and vacation packages, all supposedly in return for attending informational membership presentations at local, often newly opened, DirectBuy locations.

17.     DirectBuy's role in these offers is intentionally disguised in order to induce customers to hear more details and provide personal information before learning of their obligation to attend a DirectBuy presentation and the call's actual commercial purpose. For example, a solicitation might indicate that a consumer has won a contest that entitles them to a free vacation, inclusive of various impressive sounding perks and benefits. Following this initial pitch, a consumer will be required to provide various personal information, potentially credit card information, and then, and only then, will they be informed that receipt of the "free vacation" is contingent on them traveling to a DirectBuy showroom and attending a presentation.

18.     However, in an effort to increase sales and generate new leads at a higher rate, but lower cost, DirectBuy has turned to unsolicited telemarketing, including robocalls and SMS text messages, to obtain new members.

19.     Specifically, DirectBuy, either through its own telemarketing operations, or through business partners acting at DirectBuy's direction, has made thousands of robocalls to consumers nationwide, and has sent thousands of text messages, offering gift packages or referencing a contest the recipient supposedly entered into.

20.     In making the calls and/or sending the text messages as alleged herein, Defendant and/or agents acting on its behalf used an automatic telephone dialing system which had the capacity to produce or store and dial numbers randomly or sequentially, and/or used an artificial

or pre-recorded voice message system to place telephone calls to Plaintiffs' cellular telephones and/or landline telephones. Additionally, the equipment utilized was capable of sending text messages simultaneously *en masse* and without human intervention.

21. The calls and texts were made to consumers who never requested to receive them, never engaged in any interaction with DirectBuy, and are made on a repeat basis without consent. Defendant obtained consumers' phone numbers either through the purchase of phone number lists or by simply randomly generating them. In fact, online complaint websites are filled with hundreds of complaints regarding the receipt of automated calls from or on behalf of Defendant. From January, 2013 to March, 2013, at least three other individuals have complained about receiving unsolicited telemarketing calls either made or arranged to be made by Defendant DirectBuy. *Jeane v. DirectBuy, Inc.*, 4:13-cv-00118 (S.D. Tex.); *Sibrel v. DirectBuy, Inc.*, 3:13-cv-00050 (M.D. Tenn.); and *Walker v. DirectBuy, Inc.*, 3:13-cv-00161 (M.D. La.).

### Facts Specific to The Sojka Plaintiffs

22. Plaintiffs Stephanie Sojka and Mark Sojka's residential landline telephone number is on the National Do Not Call Registry. The Sojka Plaintiffs' residential landline telephone number was listed on the Do Not Call Registry prior to their receipt of the unsolicited telemarketing calls at issue in this Consolidated Complaint.

23. The Sojka Plaintiffs received at least five unsolicited telemarketing calls from Defendant DirectBuy or on its behalf between August 2012 and November 2012 on their residential landline telephone. All calls and voicemail messages to the Sojka Plaintiffs were placed using an automatic dialer.

24. On August 13, 2012, the Sojka Plaintiffs received a telephone call on their residential landline telephone that resulted in the following voicemail:

Hi, this is Ellie calling from …in regards to an entry form you filled out to win a $50,000 home makeover, in one of our shopping malls, movie theaters, or online in the last 12 months. I have some very good news for you. Your name was pulled last night. So give me a call back as soon as possible. My number is 888-301-0702. That number again is 888-301-0702, extension 421.

25.     At the time the call was placed to the Sojka Plaintiffs, the phone number "888-301-0702" led to a sales pitch from or on behalf of Defendant DirectBuy.

26.     On or about August 23, 2012, the Sojka Plaintiffs received a telephone call on their residential landline telephone that resulted in the following voicemail:

Hello, my name is Brooke. I'm calling on behalf of Direct Buy, in regards to an entry form I have here that you guys apparently submitted a while back. Could have been about 12 months ago. It was filled out for a chance to win a $50,000 home makeover for our National Direct Give-Away promotion. Now we did have entries all over, where you can sign yourself up to win and they did choose yours as one of our finalists, so congratulations. This does guarantee you one of the top gifts in the contest, so I strongly advise you to contact me for all the details. My number here is toll free 1-888-960-7821. I can assure you this is not a sales call. So I hope to hear from you soon and have a great day.

27.     On October 4, 2012, the Sojka Plaintiffs received the following message on their voicemail:

This call is from a verification center in regards to an entry form you filled out to win a $50,000 home makeover in one of our shopping malls, movie theaters, or online within the last 12 months. I have some very good news for you. Your name was pulled last night. Press 1 to speak to a live operator or press 2 to be placed on the DNC list.

28.     The "home makeover" referenced in the October 4, 2012 voicemail is the same offer directed to the Sojka Plaintiffs on August 23, 2012 by or on behalf of DirectBuy.

29.     On November 9, 2012, the Sojka Plaintiffs received a telephone call on their residential landline telephone that resulted in the following voicemail:

Hi this is Morgan calling from the verification center in regards to an entry form you filled out to win a $50,000 home makeover in one of our shopping malls, movie theaters, or online in the past twelve months. I have some very good news for you: your name was pulled last night. So give me a call back at 888-648-2805.

Again our number is 888-648-2805 extension 485.

30.     At the time the call was placed to the Sojka Plaintiffs, the phone number "888-648-2805" led to a sales pitch from or on behalf of Defendant DirectBuy.

31.     On November 27, 2012, the Sojka Plaintiffs received a telephone call on their residential landline telephone that resulted in the following voicemail:

> Calling from the verification center in regards to an entry form you filled out to win a $50,000 home makeover in one of our shopping malls, movie theaters, or online in the past twelve months. I have some very good news for you. Your name was pulled last night. Press 1 to speak to a live operator, or press 2 to be placed on the DNC list.

32.     The "home makeover" referenced in the November 27, 2012 voicemail is the same offer directed to the Sojka Plaintiffs on August 23, 2012 by or on behalf of DirectBuy.

33.     Plaintiffs never filled out any such entry form or otherwise entered into a "home makeover" contest. The "home makeover" program is a promotion DirectBuy engaged in for the purpose of promoting its goods and services.

34.     Each of the phone calls received by the Sojka Plaintiffs featured a pre-recorded and/or artificial voice, and not a live caller.

35.     The Sojka Plaintiffs never consented to, requested, or otherwise desired or permitted Defendant to make calls to their residential landline telephone.

### Facts Specific to Plaintiff Hartowicz

36.     For his part, starting in or around June 2012, Plaintiff Hartowicz received at least one phone call from Defendant, or a business partner acting on Defendant's behalf, on his cellular telephone.

37.     Specifically, Plaintiff received a robocall offering a gift card and other items in exchange for attending a presentation at a DirectBuy showroom.

38.     Each of the phone calls received by Plaintiff Hartowicz featured a pre-recorded and/or artificial voice, and not a live person.

39.     Plaintiff never consented to, requested, or otherwise desired or permitted Defendant to make calls to his cellular telephone.

### Facts Specific to Plaintiff Gilliam

40.     In or around November 2012, Plaintiff Kenyatta Gilliam began receiving unsolicited calls to his cellular phone.  Beginning in November 2012 and continuing through January 2013, Plaintiff Gilliam received approximately two to three calls per month, usually by a prerecorded message that would connect him to a live person.  Plaintiff Gilliam advised the caller to stop calling him on his cellular phone but the calls continued.

41.     In or around December, 2012, Plaintiff Kenyatta Gilliam received multiple text messages to his cellular phone. Specifically, Plaintiff received multiple text messages from the telephone number 562-320-5789 stating:

> this is Alexa Castro From Directbuy Club here in Signal Hill, CA the one who called you before remember ? (*sic*).

Plaintiff Gilliam immediately responded "No[t] interested" but continued to receive text messages from Defendant.

42.     Plaintiff Gilliam never consented to, requested, or otherwise desired or permitted Defendant to make telephone calls and/or text message calls to his cellular telephone.

43.     The phone calls and text messages received by Plaintiff Gilliam were made using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

44.     Defendant was and is aware that the above described telephone and text message calls were and are being made to consumers without those consumers' prior express consent.

Because Defendant's products or services were advertised through the calls and text messages, it derived a concrete economic benefit from the calls and texts made to Plaintiffs and members of the Classes.

45. Defendant DirectBuy, Inc., either negligently or willfully violated the rights of Plaintiffs and the putative Class Members in making or arranging for the unsolicited calls and text messages at issue.

## CLASS ALLEGATIONS

46. Plaintiffs Stephanie Sojka, Hartowicz and Gilliam bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and a Class defined as follows:

> **A.     DirectBuy RoboCall Class:** All individuals in the United States who (1) received a telephone call, (2) made by or on behalf of Defendant DirectBuy, Inc., (3) featuring an artificial voice or pre-recorded message, (4) who never provided prior express consent to receive such calls.

Plaintiff Gilliam brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and a Class defined as follows:

> **B.     DirectBuy Text Message Class:** All individuals in the United States who (1) received an SMS text message, (2) made by or on behalf of Defendant DirectBuy, Inc., (3) promoting Defendant's products or services, (4) who never provided prior express consent to receive such calls.

Plaintiff Stephanie Sojka brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and a Class defined as follows:

> **C.     DirectBuy Do Not Call List Class:** All individuals in the United States (1) who had his or her telephone number(s) registered with the National Do Not Call Registry, (2) to which Defendant made more than one telephone call, (3) promoting Defendant's products or services, (4) within any 12-month period, (5) who never provided prior express consent to receive such calls.

Excluded from the Classes are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a

controlling interest and their current and former employees, officers, and directors, (2)

the Judge or Magistrate Judge to whom this case is assigned and the Judge's or

Magistrate Judge's immediate family, (3) persons who execute and file a timely request

for exclusion, (4) persons whose claims have been finally adjudicated or otherwise

released, (5) the legal representatives, successors, or assigns of any such excluded person,

and (6) Plaintiffs' counsel and Defendant's counsel.

47.    **Numerosity**: The exact number of Class members is unknown and not available

to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information

and belief, Defendant has made telephone calls and sent text messages to thousands of

consumers who fall into the definitions of the Classes. Class members can be identified through

Defendant's records.

48.    **Typicality**: Plaintiffs' claims are typical of the claims of other members of the

Classes, in that Plaintiffs and the Class members sustained damages arising out of Defendant's

uniform wrongful conduct, including the making of unsolicited telephone calls and text message

calls.

49.    **Adequate Representation**: Plaintiffs will fairly and adequately represent and

protect the interests of the Classes, and have retained counsel competent and experienced in

complex class actions. Plaintiffs have no interest antagonistic to those of the Classes, and

Defendant has no defenses unique to Plaintiffs.

50.    **Commonality and Predominance**: There are many questions of law and fact

common to the claims of Plaintiffs and the Classes, and those questions predominate over any

questions that may affect individual members of the Classes. Common questions for the Classes

include, but are not necessarily limited to the following:

    (a)    whether Defendant's conduct constitutes violations of the TCPA;

    (b)    whether the equipment Defendant used to make the telephone calls in question was an automatic telephone dialing system as defined by the TCPA;

    (c)    whether Defendant systematically made telephone calls to persons who did not provide Defendant with their prior express consent to receive such telephone calls;

    (d)    whether Defendant utilized an artificial or prerecorded voice in making telephone calls;

    (e)    whether Defendant systematically made telephone calls to persons whose telephone numbers were listed on the National Do Not Call Registry; and

    (f)    whether Class members are entitled to treble damages based on the willfulness of Defendant's conduct.

51.    **Superiority**: Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Consolidated Complaint. By contrast, a class action presents far fewer management difficulties and provides

the benefits of single adjudication, economy of scale, and comprehensive supervision by a single

Court. Economies of time, effort and expense will be fostered and uniformity of decisions

ensured.

## COUNT I
### Violations of the TCPA, 47 U.S.C. §§ 227(b)(1)(A)(iii), 227(b)(1)(B)
### (On behalf of the Sojka Plaintiffs, Hartowicz, Gilliam, and the DirectBuy RoboCall Class)

52.     The Sojka Plaintiffs, Hartowicz and Gilliam incorporate by reference the

foregoing allegations as if fully set forth herein.

53.     Defendant and/or its agents made unsolicited telephone calls to telephone

numbers belonging to the Sojka Plaintiffs, Hartowicz, Gilliam and the other members of the

DirectBuy RoboCall Class without their prior express consent.

54.     Defendant and/or its agents utilized artificial or prerecorded voice messages in

making the telephone calls to the Sojka Plaintiffs, Hartowicz, Gilliam and the other members of

the DirectBuy RoboCall Class.

55.     By making, or having made on its behalf, unsolicited robocalls utilizing an

artificial or prerecorded voice to the Sojka Plaintiffs, Hartowicz, Gilliam and the other members

of the DirectBuy RoboCall Class's telephones without prior express consent, Defendant violated

47 U.S.C. §§ 227(b)(1)(A)(iii) and 47 U.S.C. §§ 227(b)(1)(B).

56.      Accordingly, the Sojka Plaintiffs, Hartowicz and Gilliam on behalf of themselves

and Plaintiffs Stephanie Sojka, Hartowicz and Gilliam on behalf of the other members of the

DirectBuy RoboCall Class, seek an Order under section 227(b)(3)(A) of the TCPA enjoining

Defendant's unlawful telephone calling activities described in this Consolidated Complaint.

57.     Further, as a result of Defendant's unlawful conduct, the Sojka Plaintiffs,

Hartowicz, Gilliam and the members of the DirectBuy RoboCall Class suffered actual damages

in the form of monies paid to receive the unsolicited telephone calls and therefore, the Sojka

Plaintiffs, Hartowicz, and Gilliam on behalf of themselves and Plaintiffs Stephanie Sojka,

Hartowicz and Gilliam on behalf of the other members of the DirectBuy RoboCall Class, seek an

Order under section 227(b)(3)(B) awarding a minimum of $500 in damages for each of

Defendant's violations of the TCPA.

58.     Should the Court determine that Defendant's conduct was willful and knowing, it

may, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by the

Sojka Plaintiffs, Hartowicz, Gilliam and the other members of the DirectBuy RoboCall Class.

**COUNT II**
**Violations of the TCPA, 47 U.S.C. §§ 227(b)(1)(A)(iii)**
**(On behalf of Plaintiff Gilliam and the DirectBuy Text Message Class)**

59.     Plaintiff Gilliam incorporates by reference the foregoing allegations as if fully set

forth herein.

60.     Defendant and/or its agents made unsolicited text message calls to telephone

numbers belonging to Plaintiff Gilliam and other members of the DirectBuy Text Message Class

without their prior express consent. The text message calls included, but were not limited to,

messages containing the following content:

> this is Alexa Castro From Directbuy Club here in Signal Hill, CA the one who
> called you before remember ? (*sic*).

61.     Defendant made the text message calls, or had them made on its behalf, using

equipment that had the capacity to store or produce telephone numbers to be called using a

random or sequential number generator, and to dial such numbers. Likewise, Defendant and/or

its agents utilized equipment that made the text message calls to Plaintiff Gilliam and other

members of the DirectBuy Text Message Class simultaneously and without human intervention.

62.     By making, or having made on its behalf, unsolicited text message calls to

14

Plaintiff Gilliam and the other members of the DirectBuy Text Message Class's telephones, using an automated dialing system and without prior express consent, Defendant violated 47 U.S.C. §§ 227(b)(1)(A)(iii).

63.     Accordingly, Plaintiff Gilliam, on behalf of himself and the other members of the DirectBuy Text Message Class, seeks an Order under section 227(b)(3)(A) of the TCPA enjoining Defendant's unlawful text messaging activities described in this Consolidated Complaint.

64.     Further, as a result of Defendant's unlawful conduct, Plaintiff Gilliam and the members of the DirectBuy Text Message Class suffered actual damages in the form of monies paid to receive the unsolicited text message calls and therefore, Plaintiff Gilliam, on behalf of himself and the other members of the DirectBuy Text Message Class, seek an Order under section 227(b)(3)(B) awarding a minimum of $500 in damages for each of Defendant's violations of the TCPA.

65.     Should the Court determine that Defendant's conduct was willful and knowing, it may, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff Gilliam and the other members of the DirectBuy Text Message Class.

**COUNT III**
**Violation of the TCPA, 47 U.S.C. § 227(c)(5)**
**(On behalf of the Sojka Plaintiffs and the DirectBuy Do Not Call Class)**

66.     The Sojka Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

67.     47 U.S.C. §227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may," bring a private action based on a violation of

said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

68.     Under Federal Communications Commission regulations implementing the Telephone Consumer Protection Act, 47 U.S.C. § 227, telemarketing robocalls are prohibited unless the consumer has given express written consent. The consumer must be clearly and conspicuously informed that the consequences of consenting is that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller. It must relate to a designated telephone number. The caller has the burden of proving consent. The regulations are published at 47 C.F.R. Part 64 [CG Docket No. 02-278; FCC 12-21], 77 FR 34233 (June 11, 2012), and took effect on July 11, 2012.

69.     The Telephone Consumer Protection Act's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "No person or entity shall initiate any telephone solicitation" to "…(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

70.     47 C.F.R. §64.1200 (e), provides that §64.1200 (c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03- 153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which Report and Order in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

16

71.     47 C.F.R. § 64.1200(d) further provides that "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for

telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for *5* years from the time the request is made.

72.     Defendant violated § 64.1200(c) by initiating telephone solicitations to wireless and residential telephone subscribers, such as the Sojka Plaintiffs and DirectBuy Do Not Call Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested not to receive calls from Defendant, as set forth in § 64.l200(d)(3).

73.     Defendant and/or its agents made more than one unsolicited telephone call to the Sojka Plaintiffs and DirectBuy Do Not Call Class members within a 12 month period, without their prior express consent to receive such calls. The Sojka Plaintiffs and DirectBuy Do Not Call Class members never provided any form of consent, at any time, to receive telephone calls from Defendant.

74.     Defendant violated § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as the Sojka Plaintiffs and DirectBuy Do Not Call Class members without instituting or following procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

75.     Defendant violated 47 U.S.C. § 227(c)(5) because the Sojka Plaintiffs  and DirectBuy Do Not Call Class members received more than one telephone call within a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

76.     As a result of Defendant's conduct as alleged herein, the Sojka Plaintiffs  and

DirectBuy Do Not Call Class members suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of § 64.1200.

77.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to § 227(c)(5), treble the amount of statutory damages recoverable by the Sojka Plaintiffs and DirectBuy Do Not Call Class members.

## PRAYER FOR RELIEF

WHEREFORE, Stephanie Sojka, Daniel Hartowicz, and Kenyatta Gilliam, individually and on behalf of the Classes, and Mark Sojka, individually, pray for the following relief:

1.     An order certifying the Classes as defined above, appointing Stephanie Sojka, Daniel Hartowicz, and Kenyatta Gilliam as Class Representatives, and appointing James O. Latturner of Edelman, Combs, Latturner & Goodwin, LLC, Jay Edelson of Edelson LLC, and Douglas J. Campion of the Law Offices of Douglas J. Campion, APC, as Class Counsel;

2.     An award of actual  or statutory damages, whichever is greater;

3.     An injunction requiring Defendant to cease all unsolicited telephone calling and text messaging activities, and otherwise protecting the interests of the Classes;

4.     An award of reasonable attorneys' fees (in the event of a class recovery) and costs; and

5.     Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried

Respectfully submitted,

**STEPHANIE SOJKA, DANIEL HARTOWICZ, and KENYATTA GILLIAM**, individually and on behalf of all others similarly situated, and **MARK SOJKA**,

By:  s/ Benjamin H. Richman
   *Counsel for Daniel Hartowicz*

Jay Edelson
Rafey S. Balabanian
Benjamin H. Richman
Christopher L. Dore
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
(312) 589-6370
jedelson@edelson.com
rbalabanian@edelson.com
brichman@edelson.com
cdore@edelson.com

By:  s/ James O. Latturner
   *Counsel for Stephanie and Mark Sojka*

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Heather A. Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 South LaSalle Street, 18th floor
Chicago, Illinois 60603
(312) 739-4200
dedelman@edcombs.com
ccombs@edcombs.com
jlatturner@edcombs.com
hkolbus@edcombs.com

By:  s/ Ronald A. Marron
   *Counsel for Kenyatta Gilliam*

Douglas J. Campion
LAW OFFICES OF DOUGLAS J. CAMPION, APC
409 Camino Del Rio South, Suite 303
San Diego, California 92108
(619) 299-2091
doug@djcampion.com

*Additional Counsel for Plaintiff Hartowicz*

Stefan Coleman*
LAW OFFICES OF STEFAN COLEMAN, LLC
201 S Biscayne Blvd, 28th Floor
Miami, FL 33131
(877) 333-9427
law@stefancoleman.com

*Additional Counsel for Plaintiff Gilliam*

Ronald A. Marron
Skye Resendes
Alexis M. Wood
Kas L. Gallucci
LAW OFFICES OF RONALD A. MARRON, APLC
651 Arroyo Drive
San Diego, California 92103
(619) 696-9006
ron@consumersadvocates.com
skye@consumersadvocates.com
alexis@consumersadvocates.com
kas@consumersadvocates.com

*Application for Admission pro hac vice forthcoming.*

<u>**CERTIFICATE OF SERVICE**</u>

I, James O. Latturner, certify that on October 25, 2013, I caused the foregoing document to be filed via the Court's CM/ECF system, which will send notification of such filing to the following parties:

| | |
|---|---|
| Thomas J. Cunningham | tcunningham@lockelord.com |
| Martin W. Jaszczuk | mjaszczuk@lockelord.com |
| Tamra J. Miller | tjmiller@lockelord.com |
| C. Joseph Yast | jyast@directbuy.com |
| Jay Edelson | jedelson@edelson.com |
| Rafey S. Balabanian | rbalabanian@edelson.com |
| Benjamin H. Richman | brichman@edelson.com |
| Christopher L. Dore | cdore@edelson.com |
| Stefan L. Coleman | law@stefancoleman.com |
| Douglas J. Campion | doug@djcampion.com |
| Ronald A. Marron | ron@consumeradvocates.com |
| Skye Resendes | skye@consumeradvocates.com |
| Alexis M. Wood | alexis@consumeradvocates.com |


   s/ James O. Latturner
James O. Latturner