UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE SOJKA, DANIEL HARTOWICZ, and KENYATTA GILLIAM, on behalf of themselves and all others similarly situated, and MARK SOJKA, <br><br>Plaintiffs, <br><br>vs. <br><br>DIRECTBUY, INC., an Indiana corporation, and DOES 1-10, <br><br>Defendants. | 12 C 9809 (consolidated with 13 C 1710 and 13 C 2786) <br><br>Judge Feinerman |

**MEMORANDUM OPINION AND ORDER**

In this consolidated suit, Stephanie Sojka, Daniel Hartowicz, and Kenyatta Gilliam, on behalf of three putative classes, and Mark Sojka, individually, allege that DirectBuy, Inc., violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, by making telemarking calls and sending text messages to Plaintiffs and other persons across the country without their prior consent. Docs. 54, 103. DirectBuy moved to transfer the case to the Northern District of Indiana pursuant to 28 U.S.C. § 1404(a) or, in the alternative, to dismiss Gilliam's claims pursuant to Federal Rule of Civil Procedure 12(b)(2). Doc. 67. The parties took months of discovery related to the motion. Docs. 74, 89, 94, 96, 99, 102, 108. In the meantime, DirectBuy withdrew its Rule 12(b)(2) motion, Doc. 102, leaving the § 1404(a) motion. That motion, which became fully briefed earlier this month, is denied.

DirectBuy is an Indiana corporation. Doc. 103 at ¶ 10. Its headquarters in Merrillville, Indiana, is approximately 42.5 miles from the federal courthouse in Chicago, Illinois, and 22 miles from the federal courthouse in Hammond, Indiana. *Ibid.*; Doc. 111 at 11; Doc. 112 at 10 n.5; Doc. 112-3. Over 300 employees work at DirectBuy's headquarters, sixteen of whom reside

1

y
z
w

in Illinois. Doc. 112 at 10; Doc. 111-2 at 4. DirectBuy has franchisee agreements with more than 130 brick and mortar locations throughout the United States and Canada, including at least three in Illinois. Doc. 103 at ¶ 1; Doc. 111 at 9; Doc. 112 at 9 n.4. Stephanie and Mark Sojka live in Will County, Illinois, Doc. 2, while Hartowicz lives in Cook County, Illinois, Doc. 2 (13 C 1710). Gilliam lives in Los Angeles, California, where he allegedly received unsolicited calls and text messages from a DirectBuy location in Signal Hill, California. Doc. 1-1 (13 C 2786); Doc. 103 at ¶¶ 40-41.

Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The moving party bears the burden of demonstrating that a transfer is warranted. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989). Transfer under § 1404(a) is appropriate if "(1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice." *Law Bulletin Publ'g, Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014, 1017 (N.D. Ill. 1998); *see also Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977-78 (7th Cir. 2010). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). The parties do not dispute that venue is proper in both the Northern District of Illinois and the Northern District of Indiana, so only the convenience factors and interest of justice factors need be considered.

The convenience factors include: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the

witnesses; and (5) the convenience of the parties. *See Law Bulletin Publ'g*, 992 F. Supp. at 1017. These factors are essentially a wash.

The first convenience factor slightly favors the Northern District of Illinois. A plaintiff's choice of forum generally deserves deference. *See Fed. Deposit Ins. Corp. v. Citizens Bank & Trust Co. of Park Ridge*, 592 F.2d 364, 368 (7th Cir. 1979). Here, three of the four named plaintiffs reside in this District. The deference given to their chosen forum is diminished somewhat, though not entirely, because this is a putative class action with thousands of putative class members across the country. Doc. 103 at ¶¶ 46-47; *see Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("when an individual … represents a class, the named plaintiff's choice of forum is given less weight"); *Nero v. Am. Family Mut. Ins. Co.*, 2011 WL 2938138, at *2 (N.D. Ill. Jul. 19, 2011) (same); *Boyd v. Snyder*, 44 F. Supp. 2d 966, 969-70 (N.D. Ill. 1999) (placing less weight on the plaintiff's choice of forum where the plaintiff brought a class action on behalf of individuals who lived mostly outside of the forum); *Georgouses v. NaTec Res., Inc.*, 963 F. Supp. 728, 730-31 (N.D. Ill. 1997) (same, where the complaint alleged that there were over 5,670 class members, only 1,900 of whom resided in the plaintiff's chosen forum in Illinois, reasoning that "while a large number of class members allegedly reside in Illinois, there is nothing in the record that shows the remaining class members are not more conveniently located to the court in Houston than Chicago").

The second convenience factor, the situs of the material events, is neutral. This case concerns the (allegedly) unsolicited calls and text messages (allegedly) sent by DirectBuy or its agents to Plaintiffs and the putative class members. DirectBuy contends that because it "makes all of its decisions out of its headquarters in Indiana," "any liability of DirectBuy, Inc. for the alleged calls and texts at issue is centered squarely in the Northern District of Indiana." Doc.

112 at 7. DirectBuy is wrong, as the situs of the material events is not just Indiana, where DirectBuy's decisions were made, but also where the calls and texts were received. *See Digan v. Euro-American Brands, LLC*, 2010 WL 3385476, at *4 (N.D. Ill. Aug. 19, 2010) (holding that the situs of the material events factor "does not weigh in favor of transfer [to New Jersey]" where the defendant asserted that all relevant adverse employment decisions were made in New Jersey, but the plaintiff felt the effects of those decisions in Illinois) (collecting cases). Here, the effects of decisions purportedly made in Indiana were felt in Illinois, where the Sojkas and Hartowicz live, in California, where Gilliam lives, and across the country, where the putative class members live. Thus, the situs of material events is not concentrated in either Illinois or Indiana. *See Nathan v. Morgan Stanley Renewable Dev. Fund, LLC*, 2012 WL 1886440, at *19 (N.D. Ill. May 22, 2012) (holding that "[b]ecause the situs of material events is not concentrated in either venue, this factor is afforded reduced weight").

The third convenience factor, the location of the material evidence, is neutral. DirectBuy contends that "[a]ll of the business, franchise, marketing, and call records of DirectBuy, Inc. are located in its Merrillville headquarters," and that "if certain … documents … Plaintiffs ask DirectBuy, Inc. to produce cannot be produced electronically, it will be more convenient for the parties to access these sources of proof in the Northern District of Indiana." Doc. 112 at 3. Plaintiffs respond that material evidence also is located in this District, such as the Sojkas' and Hartowicz's phone records and documents maintained by at least one Illinois franchisee that may have hired third parties to make calls and text messages. Doc. 111 at 17. These arguments are beside the point. There is every reason to believe that all relevant documents can easily be transported, electronically or otherwise, to Chicago or Hammond, and where, as here, "documents are easily transferrable, access to proof is a neutral factor." *Handler v. Kenneth*

4

*Allen & Assocs., P.C.*, 2011 WL 1118499, at *3 (N.D. Ill. Mar. 24, 2011) (citation omitted); *see also Johnson v. United Airlines, Inc.*, 2013 WL 323404, at *5 (N.D. Ill. Jan. 25, 2013) ("Although United has centralized at least some human resources functions in Chicago and maintains documents there, there is no reason to think that in this day and age the documents cannot easily be transferred to Virginia."); *Digan*, 2010 WL 3385476, at *5 ("documents now are easily scanned, stored, and electronically transmitted … [and] moving them no longer creates the onerous burden it may once have imposed"); *Lancelot Investors Fund, L.P. v. TSM Holdings, Ltd.*, 2007 WL 3120011, at *5 (N.D. Ill. Oct. 24, 2007) (holding that there was "no significant reason" to transfer a case from the Northern District of Illinois where "easily transferable paperwork will make up the bulk of the non-testimonial evidence in this matter"); *Morris v. Am. Bioscience, Inc.*, 2004 WL 2496496, at *3 (N.D. Ill. Nov. 3, 2004) (holding that the "location of pertinent documents does not militate for or against transfer" because of the "ready availability of photocopying and the relative ease with which documents may be selectively shipped around the country") (internal quotation marks omitted).

The fourth and fifth convenience factors, the location and convenience of witnesses and parties, are neutral. "The convenience of witnesses is often viewed as the most important factor in the transfer balance." *Nathan*, 2012 WL 1886440, at *20 (internal quotation marks omitted). The convenience of non-party witnesses carries more weight than the convenience of party witnesses, as the § 1404 calculus is generally "less concerned about the burden that appearing at trial might impose on witnesses who are either employees of parties or paid experts" because "it is presumed that such witnesses will appear voluntarily." *Bullard v Burlington N. Santa Fe Ry. Co.*, 2008 WL 4104355, at *4 (N.D. Ill. Aug. 29, 2008); *see also Prokop v. Stonemor Partners LP*, 2009 WL 3764103, at *5 (N.D. Ill. Nov. 9, 2009) ("the convenience of StoneMor's

employees is entitled only to a little weight because they are presumed to be under StoneMor's control").

Here, DirectBuy has identified one non-party witness, "an unnamed franchisee who may have engaged third-party vendors or contractors to make the calls [in Illinois]" and who is "located in the Northern District of Illinois." Doc. 68 at 2. Plaintiffs have not identified any non-party witnesses. The presence of the one identified non-party witness weighs in favor of Illinois. DirectBuy has identified four employee witnesses—David Lee, Rod Troutman, Fred Graessle, and C. Joseph Yast—who work at the company's Merrillville headquarters. Doc. 111-2 at 13; *see Howell v. Joffe*, 478 F. Supp. 2d 1014, 1023 (N.D. Ill. 2006) (noting that the convenience of named witnesses is to be given more weight than unidentified witnesses). One of those employees, Lee, lives in Frankfort, Illinois, which is closer to the Hammond courthouse than to the Chicago courthouse. Doc. 111-2 at 4. And three of the four plaintiffs live in the Northern District of Illinois. As to the party witnesses as a whole, then, neither forum is more convenient than the other.

With respect to the convenience of the parties, the court "should consider their respective residences and their ability to bear the expenses of litigating in a particular forum." *Brandon Apparel Grp., Inc. v. Quitman Mfg. Co. Inc.*, 42 F. Supp. 2d 821, 834 (N.D. Ill. 1999). "Transfer is inappropriate if it merely transforms an inconvenience for one party into an inconvenience for the other party." *Ibid.* (internal quotation marks omitted). Here, transfer to the Northern District of Indiana would merely shift the inconvenience from DirectBuy to Plaintiffs, though it bears mention that neither forum would be particularly inconvenient to the inconvenienced side. Indiana is more convenient for DirectBuy, as it will take longer for most of DirectBuy's employees to drive to the Chicago courthouse than to the Hammond courthouse. Doc. 112 at 10

n.5; Doc. 112-3. But only 22 miles separate the two courthouses, Doc. 111 at 11, so the relative inconvenience of the Chicago courthouse to DirectBuy is slight. *See Prokop*, 2009 WL 3764103, at *5 (holding that because "the distance between the Northern District of Illinois and the Northern District of Indiana is only 22 miles," "[a]ny inconvenience for Indiana witnesses is slight"). As for Plaintiffs, Illinois is marginally more convenient than Indiana. Gilliam, who lives in California, likely will fly into Chicago regardless of whether the case were tried in Chicago or Hammond, making the Chicago courthouse more convenient. The record does not reveal where Hartowicz resides in Cook County or where the Sojkas reside in Will County, so it cannot be determined which courthouse is more convenient to them. On balance, the convenience of the parties and witnesses is neutral or close thereto.

In sum, the convenience factors are essentially neutral. The court next evaluates the interest of justice factors. "The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system. For this element, courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." *Research Automation*, 626 F.3d at 978 (citations omitted).

The first interest of justice factor is neutral, as there is only a modest difference in the expected speed of case resolution between the two courts. The median time from filing to disposition is 6.7 months in the Northern District of Illinois and 10.6 months in the Northern District of Indiana. *See* U.S. District Court-Judicial Caseload Profile, http://www.uscourts.gov /viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2013/district-fcms- profiles-september-2013.pdf&page=47 (last viewed March 17, 2014). The median time from

7

filing to trial is 32.2 months in the Northern District of Illinois and 27 months in the Northern District of Indiana. *See ibid*. This case is thus likely to proceed at a similar pace in either forum.

The second interest of justice factor, familiarity with the applicable law, is neutral. Plaintiffs allege violations only of the TCPA. The Northern District of Illinois and the Northern District of Indiana are equally capable of interpreting and applying the TCPA, a federal statute. *See Research Automation*, 626 F.3d at 978 (requiring consideration of "each court's relative familiarity with the relevant law"); *Sutherland v. Cybergenics Corp.*, 907 F. Supp. 1218, 1223 (N.D. Ill. 1995). DirectBuy nonetheless contends that the Northern District of Indiana is the better forum because "the Court may be required to interpret the franchise agreement between DirectBuy, Inc. and any independent franchisee(s) who may have engaged a third-party vendor or vendors to make the purported calls at issue," and "the[se] franchise agreements are governed by Indiana law and specify that the Northern District of Indiana would be the sole and exclusive venue for such suits, although certain states (Illinois and California but not Texas, for example) have franchise laws which restrict applicability of choice of law and venue provisions in franchise agreements." Doc. 68 at 2.

DirectBuy's argument is unpersuasive. As an initial matter, DirectBuy has yet to file any third-party claims against its franchisees, and it is not clear that any such claims will be filed. And as DirectBuy acknowledges, even if it were to file third-party claims against the Illinois and California franchisees referenced in the complaint, Doc. 103 at ¶¶ 13, 41, Illinois and California law would override the franchise agreements' forum selection clauses. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 804 (7th Cir. 2011) (holding that "[t]he Illinois Franchise Act [815 ILCS 705/4] voids all forum-selection clauses in franchise agreements"); *Bradley v. Harris Research, Inc.*, 275 F.3d 884, 888 n.4, 892 (9th Cir. 2001) (explaining that the California

Franchise Relations Act provides that a "provision in a franchise agreement restricting venue to a forum outside this state is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state") (quoting Cal. Bus. & Prof. Code § 20040.5). Moreover, it is not at all clear that the California and Illinois franchise agreements' choice of law clauses, which provide that the agreements shall be governed by Indiana law, would be honored. *See Sound of Music Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d 910, 917 n.2 (7th Cir. 2007) (holding that the Illinois Franchise Act applied to a Minnesota franchisor's franchise agreement with an Illinois franchisee even though the franchise agreement stated that Minnesota law governed); *To-Am Equip. Co. v. Mitsubishi Caterpillar Forklift Am., Inc.*, 152 F.3d 658, 662 (7th Cir. 1998) (same for a franchise agreement with an Illinois franchisee stating that Texas law governed); *Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*, 889 F. Supp. 2d 1198, 1216 (E.D. Cal. 2012) (explaining that "California will apply the law indicated by the choice of law provision [in the franchise agreement] where: (1) the chosen state has a substantial relationship to the parties or their transaction, or where (2) there is any other reasonable basis for the parties' choice of law," and where "the chosen state's law is [not] contrary to the fundamental policy of California") (internal quotation marks omitted). And even if interpretation of the franchise agreements were governed by Indiana law, Indiana franchise law is not so unusual or esoteric that this court would be materially disadvantaged in applying it.

The third and fourth interest of justice factors, the desirability of resolving controversies in each locale and the relation of each community to the controversy, slightly favor Indiana. Indiana has a significant interest in resolving the litigation because DirectBuy's headquarters and most of its employees are located in Merrillville, and Indiana is also where the agreements between DirectBuy and its franchisees were negotiated and executed. *See Shakir Dev. &*

9

*Constr., LLC v. Flaherty & Collins Constr., Inc.*, 2011 WL 2470887, at *4 (N.D. Ill. June 21, 2011) ("Because the apartment complex is located in Indiana, the parties conducted business in Indiana, the agreements were negotiated and executed in Indiana, and the alleged fraud occurred in Indiana, Indiana has a far greater interest than Illinois in resolving this litigation, and a far more significant relationship to the controversy."). However, Illinois has an interest in resolving the case as well. Although Illinois is just one of many States where the alleged TCPA violations occurred, three of the four current plaintiffs received unsolicited communications in Illinois, DirectBuy regularly holds sales and service meetings in Illinois, and DirectBuy has franchisee agreements with at least three stores in Illinois. Doc. 111 at 9; Doc. 112 at 9 n.4.

In sum, the interest of justice factors slightly favor Indiana, while the convenience factors are essentially neutral. That is not sufficient to carry the day for DirectBuy, as transfer can be ordered only if the balance of factors "strongly" favor the defendant's proposed forum. *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed") (internal quotation marks omitted). DirectBuy's motion to transfer accordingly is denied.

March 18, 2014

_____
United States District Judge