UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE SOJKA, DANIEL HARTOWICZ, and KENYATTA GILLIAM, on behalf of themselves and all others similarly situated, and MARK SOJKA, <br><br> Plaintiffs, <br><br> vs. <br><br> DIRECTBUY, INC., an Indiana corporation, and DOES 1-10, <br><br> Defendants. | 12 C 9809 (consolidated with 13 C 1710 and 13 C 2786) <br><br> Judge Feinerman |

**MEMORANDUM OPINION AND ORDER**

In this consolidated suit, Stephanie Sojka, Daniel Hartowicz, and Kenyatta Gilliam, on behalf of three putative classes, and Mark Sojka, individually, allege that DirectBuy, Inc. violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, by making telemarketing calls and sending text messages to Plaintiffs and other persons without their prior consent. Docs. 54, 103. Count I of the operative complaint alleges that DirectBuy made unsolicited telephone calls to the Sojkas, Hartowicz, Gilliam, and other members of the putative "RoboCall class" using an artificial or pre-recorded voice, in violation of §§ 227(b)(1)(A)(iii) and (b)(1)(B). Doc. 103 at ¶¶ 52-58. Count II alleges that DirectBuy sent unsolicited text messages to Gilliam and other members of the putative "Text Message class" using an automated dialing system, in violation of § 227(b)(1)(A)(iii). *Id*. at ¶¶ 59-65. Count III alleges that DirectBuy made more than one call within a twelve-month period to the Sojkas and other members of the putative "Do Not Call class" who had registered their phone numbers on the federal "do-not-call" registry, in violation of § 227(c)(5). *Id*. at ¶¶ 66-77.

DirectBuy moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts I and II. Doc. 69. The motion states, and the initial supporting memorandum confirms, that DirectBuy preferred that the court rule on its motion to transfer under 28 U.S.C. § 1404(a), Doc. 67, before taking up the Rule 12(b)(6) motion. Doc. 69 at ¶ 3; Doc. 82 at 1. After discovery and briefing, the court denied the § 1404(a) motion. Docs. 115-116, reported at 2014 WL 1089072 (N.D. Ill. Mar. 18, 2014). The court now denies the Rule 12(b)(6) motion as well.[*]

**Background**

In considering the motion to dismiss, the court assumes the truth of the second amended complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must also consider "documents attached to the [second amended] complaint, documents that are critical to the [second amended] complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Plaintiffs' brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The following facts are set forth as favorably to Plaintiffs as those materials allow. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

DirectBuy "is a membership-based wholesale retailer specializing in home furnishings and other home goods" with over 130 brick and mortar locations in the United States and Canada. Doc. 103 at ¶¶ 1, 14. DirectBuy's business model requires that it regularly recruit new members to join its programs and pay the associated monthly fees. *Id.* at ¶ 15. To attract potential members, and through either its own telemarketing operations or those of its agents,

---

[*] DirectBuy's motion is directed at Counts I and II of the consolidated amended complaint. Doc. 60. After the motion was filed, Plaintiffs filed a second consolidated amended complaint, Doc. 103, which for present purposes is materially indistinguishable from the consolidated amended complaint. Thus, the Rule 12(b)(6) motion is deemed to be directed to the second consolidated amended complaint. Doc. 102.

DirectBuy made thousands of calls and text messages to consumers nationwide in which it offers gift cards, sweepstakes entries, vacation packages, and other gift items in return for the consumer's attendance at informational membership presentations at local DirectBuy locations. *Id*. at ¶¶ 16-19.

Between August 2012 and November 2012, the Sojkas received at their residential landline at least five unsolicited telemarketing calls from DirectBuy. *Id*. at ¶ 23. The calls allegedly were placed from an automatic dialer. *Ibid*. At the time those calls were placed, the Sojkas' landline number was listed on the national "do-not-call" registry. *Id*. at ¶ 22.

The details of the calls are as follows. On August 13, 2012, the Sojkas received this voicemail on their landline:

> Hi, this is Ellie calling from … in regards to an entry form you filled out to win a $50,000 home makeover, in one of our shopping malls, movie theaters, or online in the last 12 months. I have some very good news for you. Your name was pulled last night. So give me a call back as soon as possible. My number is 888-301-0702. That number again is 888-301-0702, extension 421.

*Id*. at ¶ 24. The 888 phone number "led to a sales pitch from or on behalf of … DirectBuy." *Id*. at ¶ 25. On or about August 23, 2012, the Sojkas received this voicemail:

> Hello, my name is Brooke. I'm calling on behalf of Direct Buy, in regards to an entry form I have here that you guys apparently submitted a while back. Could have been about 12 months ago. It was filled out for a chance to win a $50,000 home makeover for our National Direct Give-Away promotion. Now we did have entries all over, where you can sign yourself up to win and they did choose yours as one of our finalists, so congratulations. This does guarantee you one of the top gifts in the contest, so I strongly advise you to contact me for all the details. My number here is toll free 1-888-960-7821. I can assure you this is not a sales call. So I hope to hear from you soon and have a great day.

*Id*. at ¶ 26. On October 4, 2012, the Sojkas received this voicemail:

> This call is from a verification center in regards to an entry form you filled out to win a $50,000 home makeover in one of our shopping malls, movie theaters, or online within the last 12 months. I have some very good news for

> you. Your name was pulled last night. Press 1 to speak to a live operator or press 2 to be placed on the DNC [Do Not Call] list.

*Id*. at ¶ 27. The home makeover referenced in this voicemail is the same as that referenced in the August 23 voicemail. *Id*. at ¶ 28. On November 9, 2012, the Sojkas received this voicemail:

> Hi this is Morgan calling from the verification center in regards to an entry form you filled out to win a $50,000 home makeover in one of our shopping malls, movie theaters, or online in the past twelve months. I have some very good news for you: your name was pulled last night. So give me a call back at 888-648-2805. Again our number is 888-648-2805 extension 485.

*Id*. at ¶ 29. The 888 phone number "led to a sales pitch from or on behalf of … DirectBuy." *Id*. at ¶ 30. On November 27, 2012, the Sojkas received this voicemail:

> Calling from the verification center in regards to an entry form you filled out to win a $50,000 home makeover in one of our shopping malls, movie theaters, or online in the past twelve months. I have some very good news for you. Your name was pulled last night. Press 1 to speak to a live operator, or press 2 to be placed on the DNC list.

*Id*. at ¶ 31. As with the October 4 voicemail, the home makeover referenced in this voicemail is the same as that referenced in the August 23 voicemail. *Id*. at ¶ 32.

Although the voicemails repeatedly suggest otherwise, the Sojkas had never filled out any "entry form" or entered into any home makeover sweepstakes sponsored by DirectBuy. *Id*. at ¶ 33. The calls and voicemails featured a pre-recorded and/or artificial voice, not a live caller. *Id*. at ¶ 34. At no time did the Sojkas consent to or request calls from DirectBuy. *Id*. at ¶ 35.

Hartowicz received at least one call to his cell phone from DirectBuy or its agent starting in or around June 2012. *Id*. at ¶ 36. Each call featured a pre-recorded and/or artificial voice, and each involved an offer for a gift card and other items in exchange for attending a presentation at a DirectBuy showroom. *Id*. at ¶¶ 37-38. Hartowicz never consented to or requested calls from DirectBuy. *Id*. at ¶ 39.

Gilliam began receiving calls to his cell phone from DirectBuy or its agent around November 2012. *Id*. at ¶ 40. Although he advised the caller to stop, Gilliam continued to receive approximately two to three calls per month from DirectBuy through January 2013. *Ibid*. These calls "usually" were "a pre-recorded message that would then connect him to a live person." *Ibid*.

In or around December 2012, Gilliam received multiple text messages to his cell phone from the number 562-320-5789, stating:

> this is Alexa Castro From Directbuy Club here in Signal Hill, CA the one who called you before remember ?

*Id*. at ¶ 41. Although Gilliam immediately replied, "No[t] interested," to the first text, he continued to receive these messages. *Ibid*. The identical text message was sent to members of the putative class. *Id*. at ¶ 60. At no point did Gilliam consent to or request text messages or phone calls from DirectBuy. *Id*. at ¶ 42. These texts allegedly were made "using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers." *Id*. at ¶ 43.

## Discussion

The TCPA provides in relevant part:

> It shall be unlawful for any person within the United States …
>
> > (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— …
> >
> > > (iii) to any telephone number assigned to a … cellular telephone service … or any service for which the called party is charged for the call;
> >
> > (B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party ….

47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(1)(B). The statute defines an "automatic telephone dialing system" ("ATDS") as "equipment which has the capacity … to store or produce telephone numbers to be called, using a random or sequential number generator; and … to dial such numbers." *Id*. § 227(a)(1). A text message is a "call" within the meaning of the TCPA. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (holding that "the TCPA's prohibition on ATDSs encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls") (internal quotation marks omitted); *Strickler v. Bijora, Inc.*, 2012 WL 5386089, at *5 (N.D. Ill. Oct. 30, 2012) ("the language of the TCPA and its legislative history support the conclusion that the term 'call' encompass[es] both oral calls and text messages").

As noted above, Count I alleges that DirectBuy violated the TCPA by making unsolicited phone calls using an artificial or pre-recorded voice, Doc. 103 at ¶¶ 52-58, while Count II alleges that DirectBuy violated the TCPA by sending unsolicited text messages using an ATDS, *id*. at ¶¶ 59-65. DirectBuy argues that Counts I and II should be dismissed because they fail in two ways to satisfy the Rule 8(a)(2) pleading standard as interpreted by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Both arguments fail.

*First*, DirectBuy argues that Count I "make[s] the impermissible conclusory allegation that DirectBuy, Inc. 'utilized artificial or prerecorded voice messages in making the telephone calls to the Sojka Plaintiffs, Hartowicz, Gilliam and other members of the DirectBuy RoboCall Class' without stating any facts to support these allegations," *id*. at 3 (quoting Doc. 103 at ¶ 54), and that Count II "makes the unsupported conclusory allegation that DirectBuy, Inc. 'made the text message calls, or had them made on its behalf, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and

to dial such numbers[,]' and that DirectBuy, Inc. or its agents 'utilized equipment that made the text message calls to Plaintiff Gilliam and other members of the DirectBuy Text Message Class simultaneously and without human intervention," *id*. at 3-4 (quoting Doc. 103 at ¶ 61). Plaintiffs' allegations, DirectBuy contends, "merely parrot the words of the [TCPA] without offering any factual basis for the allegations—precisely the type of allegations *Twombly* … forbid[s]." *Id*. at 4.

To support this contention, DirectBuy cites decisions holding that "allegations merely parroting the language of the TCPA with respect to use of an ATDS are 'bare legal conclusion[s] entitled to no weight,'" *Abbas v. Selling Source, LLC*, 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14, 2009), and adds that "additional facts supporting the defendant's use of an ATDS must be asserted before a court can find that plaintiffs have stated a claim under the TCPA." Doc. 82 at 6; *see Johansen v. Vivant, Inc.*, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012) ("Without enhancing his complaint with anything more than the language already available in the [TCPA], Plaintiff provides only a threadbare, formulaic recitation of the elements of a TCPA cause of action, which is not entitled to an assumption of truth. … [I]t is not sufficient to recite [statutory language pertaining to the use of an ATDS and the pre-recorded nature of the messages] verbatim without other supporting details.") (internal quotation marks omitted); *Duran v. Wells Fargo Bank, N.A.*, 878 F. Supp. 2d 1312, 1316 (S.D. Fla. 2012) (dismissing the complaint where the "[p]laintiff provides no facts whatsoever about any automated or pre-recorded calls Defendant allegedly made"); *Knutson v. ReplyA, Inc.*, 2011 WL 291076, at *2 (S.D. Cal. Jan. 27, 2011) (same, where "[t]here is nothing in the complaint that allows the court to infer the calls were randomly generated or impersonal," noting that "[a]s an isolated assertion, it is conclusory to allege that messages were sent using equipment that, upon information and belief, had the

capacity to store or produce telephone numbers to be called, using a random or sequential number generator") (internal quotation marks omitted). DirectBuy contends that the correct approach is exemplified by *Johansen*, which held:

> [A] plaintiff must supply enough additional, independent facts "to raise a reasonable expectation that discovery will reveal evidence" of the alleged misconduct. *Twombly*, 550 U.S. at 556. For example, a TCPA plaintiff could describe the robotic sound of the voice on the other line, the lack of human response when he attempted to have a conversation with the "person" calling him, the generic content of the message he received, or anything else about the circumstances of a call or message contributing to his belief it was pre-recorded or delivered via an ATDS.

2012 WL 6590551, at *3; *see also Abbas*, 2009 WL 4884471, at *3 (holding that the plaintiff sufficiently alleged that text messages came from an ATDS where, in addition to "parrot[ing] [the TCPA's] language in his Complaint," the plaintiff alleged that the defendant "used an 'SMS short code' … to send him the initial SMS message," "the text of the SMS message [the plaintiff] allegedly received clearly suggests that it is from an institutional sender without any personalization," and the defendant allegedly "sent mass transmissions of wireless spam to potential customers," and where "there is no indication that [the defendant] had any reason to call [the plaintiff's] number aside from telemarketing purposes") (internal quotation marks omitted).

As Plaintiffs observe in response, and as DirectBuy itself recognizes, Doc. 82 at 6, there is a conflicting line of cases holding that "merely reciting the statutory definition of an ATDS or alleging that a defendant used an artificial or prerecorded voice suffices at the pleading stage." Doc. 92 at 6; *see Blair v. CBE Grp. Inc.*, 2013 WL 2029155, at *4 (S.D. Cal. May 13, 2013) (holding that the plaintiff stated a TCPA claim where the complaint alleged that "Defendant used an automatic telephone dialing system which had the capacity to produce or store and dial numbers randomly or sequentially, to place telephone calls to Plaintiff's cellular telephone

and/or used an artificial or pre-recorded voice message system, to place telephone calls to Plaintiff's cellular telephone") (collecting cases); *Torres v. Nat'l Enter. Sys., Inc.*, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012) (same, where the plaintiff "expressly alleges repeatedly in her amended complaint that [the defendant] used an automatic telephone dialing system," and rejecting the defendant's argument that "the amended complaint lacks sufficient details to plausibly suggest that [the defendant] used an automatic telephone dialing system," reasoning that the defendant "is seeking to address evidentiary issues that are premature at this juncture" and that it would not "even be reasonable to hold plaintiffs in TCPA cases to the standard proposed by [the defendant] since it would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used for a communication left on a plaintiff's voicemail"); *In re Jiffy Lube Int'l, Inc.*, 847 F. Supp. 2d 1253, 1260 (S.D. Cal. 2012) (same, where the plaintiffs "have stated that they received a text message from an SMS short code and that the message was sent by a machine with the capacity to store or produce random telephone numbers," explaining that "[w]hile additional factual details about the machines might be helpful, further facts are not required to move beyond the pleading stage"); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1010-11 (N.D. Ill. 2010) (same, where the plaintiff "specifically alleges that Defendants used 'equipment with the capacity to store or produce telephone numbers to be called, using a random or sequential number generator'").

There is no need to choose sides between the conflicting lines of authority in this case because Plaintiffs satisfy the stricter pleading standard urged by DirectBuy. As *Johansen* puts it, under that standard, "a TCPA plaintiff could describe … anything … about the circumstances of a call or message contributing to his belief it was pre-recorded or delivered via an ATDS." 2012

9

WL 6590551, at *3. In arguing that Plaintiffs "have merely parroted the language of the TCPA" and stated "conclusory allegations that DirectBuy, Inc. utilized a prerecorded voice in calling them or used an ATDS in sending the alleged text messages," Doc. 82 at 6-7, Defendants fail to account for Plaintiffs' non-conclusory factual allegations that satisfy the stricter standard.

With respect to Count I, each plaintiff has alleged facts giving rise to the reasonable inference that DirectBuy made unsolicited telephone calls using an artificial or pre-recorded voice, in violation of §§ 227(b)(1)(A)(iii) and (b)(1)(B). The complaint describes in detail five voicemails left for the Sojkas by DirectBuy from August 2012 to November 2012. Doc. 103 at ¶¶ 24-31. Although each voicemail references "an entry form filled out to win a $50,000 home makeover" for DirectBuy's "National Direct Give-Away promotion," the Sojkas allege that they never filled out such an entry form. *Ibid*. Moreover, the voicemails contained generic statements that were repeated verbatim, including, "I have some very good news for you: your name was pulled last night." *Id*. at ¶¶ 24, 27, 29, 31. The October 4 and November 27 voicemails stated "Press 1 to speak to a live operator or press 2 to be placed on the [Do Not Call] list," a clear indication that a live caller did not leave the messages. *Id*. at ¶¶ 27, 31. The complaint likewise alleges that Gilliam received several unsolicited calls from DirectBuy consisting of a "prerecorded message that would connect him to a live person." *Id*. at ¶ 40. And Hartowicz is alleged to have received at least one call in which a pre-recorded voice, as opposed to a live speaker, offered him gift items in exchange for attending a presentation at the DirectBuy showroom. *Id*. at ¶¶ 36-37, 39. This "call to Hartowicz … was generic in nature." Doc. 92 at 9. These allegations are sufficient to allege a violation of §§ 227(b)(1)(A)(iii) and (b)(1)(B) even under *Johansen*. See *Johansen*, 2012 WL 6590551, at *3 (holding that a "descri[ption of] the … generic content of the message" can support a TCPA claim); *Duran*, 878 F. Supp. 2d at 1316

(noting that the allegation that a plaintiff "*spoke* with Defendant's representatives … negates a claim that the calls were made by an automated dialing system or artificial or prerecorded voice"); *Knutson*, 2011 WL 291076, at *2 (explaining that a TCPA claim is properly stated where "the complaint … allows the court to infer the calls were … impersonal").

With respect to Count II, Gilliam has sufficiently alleged that DirectBuy sent unsolicited text messages using an ATDS, in violation of § 227(b)(1)(A)(iii). Gilliam received the identical text message multiple times from "Alexa Castro from DirectBuy" after specifically responding that he was not interested, which is indicative of the impersonal and automatic nature of the messages. Doc. 103 at ¶ 41. Coupled with the allegation that members of the putative class received the same messages, *id*. at ¶ 60, it is reasonable to infer that the messages were sent using an ATDS. *See Abbas*, 2009 WL 4884471, at *3 (holding that the allegation that the defendant "sent mass transmissions of wireless spam to potential customers," together with the fact that "the text of the SMS message … clearly suggests that it is from an institutional sender without any personalization," support the inference that an ATDS was used to send the messages) (internal quotation marks omitted); *cf. Friedman v. Massage Envy Franchising, LCC*, 2013 WL 3026641, at *2 (S.D. Cal. June 13, 2013) (holding that the complaint did not state a plausible TCPA violation where "the text messages that the Plaintiffs present are similar in content, but differ enough to make it appear as if an ATDS was not utilized").

*Second*, DirectBuy argues that dismissal is warranted "for failure to allege sufficient details regarding *each* call or text Plaintiffs contend violated the TCPA." Doc. 82 at 8 (emphasis added). For support, DirectBuy cites this passage from *Abbas*:

> After alleging several facts regarding the initial, offending SMS message he allegedly received from Selling Source, Abbas makes broad, conclusory allegations regarding the "numerous" further messages that he allegedly received. While Rule 8(a)(2) does not require facts to be pled with

> particularity, Abbas's allegations here provide no notice to Selling Source
> about the subsequent messages Abbas allegedly received. There is no
> allegation regarding when Abbas received the later messages, what those
> messages stated, or from what numbers he received the later messages. Some
> fair notice to Selling source is particularly necessary here because Abbas
> seeks recovery for each violation of the TCPA. Abbas's allegations regarding
> subsequent messages he received are insufficient but not beyond cure, and so
> his Complaint is dismissed with leave to amend.

2009 WL 4884471, at *2 (citations omitted). DirectBuy also cites *Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977 (N.D. Ill. 2013), which held: "Hanley does not plead how many calls Green Tree allegedly made to him in violation of the Act. Nor does Hanley plead when the allegedly offending calls were made. He does not plead when he asked Green Tree to cease calling him, [and] nor how he asked. … Hanley's complaint, therefore, is highly suspect because it merely recites naked facts mimicking the elements of a cause of action under the TCPA." *Id*. at 983. DirectBuy argues that although Plaintiffs provide facts about *some* calls and text messages, they have failed to allege specific facts regarding exactly how many calls or text messages they received, when those calls or text messages were made, from what number those calls or text messages came, and the contents thereof. Doc. 82 at 9.

This court respectfully disagrees with *Abbas* and, to the extent (if any) it mirrors *Abbas*, *Hanley*. Rule 8(a)(2) does not require a TCPA plaintiff to plead every detail about every text message or telephone call placed. *See Strickler*, 2012 WL 5386089, at *2 (expressing "disagree[ment] with the *Abbas* court to the extent that it concludes that notice pleading requires a plaintiff alleging a TCPA violation to plead details about every text message allegedly sent," and holding that allegations regarding the date and content of sixteen of fifty messages between September 2009 and May 2011 were sufficient). The court agrees with *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010), which rejected the defendant's argument that

12

"[t]here is no way to tell, what involvement, if any, [the defendant] had in the dissemination of the remaining eight text messages" not detailed in the complaint, reasoning as follows:

> [T]his misses the crux of [the plaintiff's] putative class action under the TCPA. The core of the complaint is that Defendants each played a role in sending en masse unsolicited text messages to [the plaintiff] and possibly thousands of other individuals. The Court finds persuasive [the plaintiff's] argument that, because the TCPA is designed to combat mass unsolicited commercial telemarketing, at times involving thousands of calls or text messages, notice pleading standards do not require a plaintiff to allege details at the pleading stage about the time and context of every text message.

*Id*. at 1172. On that understanding of what is necessary to plead a TCPA claim, which this court adopts, DirectBuy's second ground for dismissal fails.

## Conclusion

For the foregoing reasons, DirectBuy's motion to dismiss is denied. Defendants shall answer the second consolidated amended complaint by April 21, 2014.

March 31, 2014

United States District Judge